UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA MURRAY,<br><br>        Plaintiff,<br><br>v.<br><br>GARY MULGREW<br><br>    and<br><br>ROYAL BANK OF SCOTLAND GROUP PLC,<br><br>        Defendants. | Civil Action 08-01541 (HHK) |

**MEMORANDUM OPINION**

Laura Murray brings this action against Gary Mulgrew, her ex-husband, and the Royal Bank of Scotland Group PLC ("RBS Group"), which is now the parent company of Mulgrew's former employer, National Westminster Bank ("NatWest"). The case arises from Mulgrew's alleged mistreatment of Murray during their marriage as well as his alleged concealment from her of funds he illegally obtained during his employment with NatWest. Murray alleges two counts of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against Mulgrew and thirteen additional counts, each against Mulgrew, RBS Group, or both, of violations of various laws of the United Kingdom.

Before the Court are motions to dismiss filed by Mulgrew and RBS Group, respectively [##20, 13]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the Court concludes that Murray's complaint should be dismissed.

# I. BACKGROUND

Laura Murray, a United States citizen, was married to Gary Mulgrew in the United Kingdom in July 1991. Compl. ¶ 1.[1] Murray and Mulgrew separated in October 2003 and were divorced in February 2006. *Id.* Murray alleges that during their marriage, Mulgrew both physically and emotionally abused her by striking, shaking, throwing objects at, and insulting her. *Id.* ¶¶ 2, 27-32. She also alleges that Mulgrew opened bank accounts and created liabilities in her name without her knowledge and consent and that he has failed to make required child support payments to her. *Id.* ¶¶ 23-25.

During Murray and Mulgrew's marriage, Mulgrew was employed by NatWest, which is now a part of RBS Group. *Id.* ¶ 4. In 2000, Mulgrew and two co-workers ("the NatWest Three") defrauded RBS Group of funds it held in a company known as LJM Swap Sub, L.P. *Id.* ¶¶ 4-5. In part through a series of wire communications, the NatWest Three converted and divided equally amongst themselves approximately $7.5 million. *Id.* ¶¶ 6-12. Mulgrew concealed the proceeds of the scheme throughout his marriage to, and divorce from, Murray. *Id.* ¶ 13. In November 2007, Mulgrew and the other two members of the NatWest Three pled guilty to one count each of wire fraud in the United States District Court for the Southern District of Texas. *Id.* ¶ 14. As a part of his plea, Mulgrew agreed that he and his two co-workers were jointly and severally liable to RBS Group and would pay full restitution. *Id.* ¶ 18.

Murray filed this action on September 5, 2008.[2] Counts I and II of her complaint allege that Mulgrew violated RICO sections 1962(c) and 1962(d) by engaging in wire fraud to execute

---

[1] All citations herein to Murray's complaint refer to the First Amended Complaint.

[2] Murray amended her complaint on October 1, 2008.

the NatWest Three's scheme and then concealing from her the funds he held as a result when the couple divided their property upon divorce. Counts III through XV allege various violations of United Kingdom law. Murray asserts claims of assault, battery, intentional infliction of emotional distress, breach of contract, deceit, fraudulent concealment, intentional misrepresentation, negligent misrepresentation, and breach of fiduciary duty by Mulgrew based on his alleged abuse of Murray during their marriage as well as his concealment of funds and failure to pay child support. Against RBS Group, she alleges negligent failure to supervise and breach of fiduciary duty for failing to prevent Mulgrew's participation in the NatWest Three's scheme and for allowing him to open bank accounts in her name. She also asserts claims of civil conspiracy and negligence by both defendants.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court considering a motion to dismiss on this ground must assume that all factual allegations in the complaint are true, even if they are doubtful. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief,'" however, "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

3

## III. ANALYSIS

**A.    Murray's RICO Claims Must Be Dismissed Because She Has Not Alleged Facts to Support the Contention That the RICO Violation Was a Proximate Cause of Her Injuries**.

The Racketeer Influenced and Corrupt Organizations Act provides, in relevant part, that:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962. RICO permits private plaintiffs to bring civil actions to collect damages for injuries arising from violations of section 1962. 18 U.S.C. § 1964(c) ("Any person injured in [her] business or property by reason of a violation of section 1962 . . . may sue therefor . . . and shall recover threefold the damages [s]he sustains and the cost of the suit, including a reasonable attorney's fee."). The Supreme Court has interpreted section 1964(c) not to allow "all factually injured plaintiffs to recover" but to instead require that a plaintiff show that the RICO violation was a proximate cause of the injuries for which she seeks redress. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 266-68 (1992).

Mulgrew argues that Murray's RICO claims must be dismissed because she has not alleged facts sufficient to show the proximate cause necessary to maintain them. Mulgrew Mot. to Dismiss at 3-4. Specifically, he asserts that Murray was not a victim of his alleged RICO violations—the fraud against NatWest to which Mulgrew pled guilty—and that any injury she

may have suffered was "entirely distinct from the alleged RICO violation." *Id.* at 3, 6 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006)).

Murray responds that she has made "numerous proximate-cause allegations that more than adequately state claims for relief under RICO." Opp'n to Mulgrew's Mot. to Dismiss at 11. Murray contends that Mulgrew's concealment of his activities were "part and parcel of Mulgrew's racketeering activity that was the proximate cause of Plaintiff's injuries to her property," and that she has "more than sufficiently alleged" a "'direct relation' between [her] injury and Mulgrew's 'injurious conduct.'" *Id.* at 15-16. Murray's argument is without merit.

The Supreme Court held in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), that to satisfy the proximate cause requirement, a plaintiff in a civil RICO action must show "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268. The Court has repeatedly and recently reiterated this proximate cause requirement. *See Hemi Group, LLC v. City of New York, N.Y.*, 130 S. Ct. 983, 989 (2010) (explaining that *Holmes* set forth the proximate cause requirement in civil RICO actions and made clear that "[a] link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient" (quoting *Holmes*, 503 U.S. at 271) (alteration in original)); *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131, 2142 (2008) (describing the conclusion from *Holmes* that "§ 1964(c) . . . requires the plaintiff to establish proximate cause in order to show injury 'by reason of' a RICO violation" (quoting *Holmes*, 503 U.S. at 268)); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460, 461 (2006) (holding that in evaluating whether the proximate causation element established in *Holmes* is met, "the central question [a court] must ask is whether the alleged violation led directly to the

5

plaintiff's injuries," and declining to "broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly").

Here, Murray has failed to allege any facts sufficient to support a finding of proximate causation. Murray asserted in her complaint that "[a]s a direct and proximate result" of Mulgrew's fraud and concealment, she "suffered damage to her property." Compl. ¶¶ 48, 53. Although it is less than certain to what damage Murray refers, the Court can only infer that she means to indicate she suffered a loss because she did not receive a share of Mulgrew's fraudulently obtained funds in the couple's divorce settlement. A claim for relief "requires more than labels and conclusions," *Twombly*, 550 U.S. at 555, and Murray's complaint does not explain the alleged causal link between Mulgrew's actions (stealing money from NatWest) and her alleged injury (a reduced award in the couple's divorce agreement). Murray's complaint contains no facts that could lead this Court to find that Mulgrew's fraud directly harmed Murray, and the Court notes the obvious conclusion that—assuming harm occurred—Mulgrew's concealment of the success of his scheme, rather than the theft itself, was the cause of Murray's injury.[3]

---

[3] Murray also relies on *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131 (2008), to support the proposition that a plaintiff need not be the primary and intended victim of a scheme to defraud, but rather need only have suffered a real injury as a result of the fraud, in order to sustain a civil RICO claim. Opp'n to Mulgrew's Mot. to Dismiss at 15. Although Murray's understanding of *Bridge* is correct, the holding of that case has no bearing on the outcome here. In *Bridge*, the plaintiffs, bidders in a county tax lien auction, suffered harm as a direct result of a competitor's fraudulent misrepresentation to the county. 128 S. Ct. at 2136, 2138-39. As a result of this fraud against the county, the competitor was able to acquire more liens than would otherwise have been possible. *Id.* The competitor's acquisitions therefore directly caused a real injury to the plaintiffs, who lost the opportunity to obtain some liens, even though the plaintiffs were not the intended victims. *Id.* In this case, Murray was similarly not the intended victim of the relevant fraudulent scheme; because of *Bridge*, that fact does not exclude her as a possible civil RICO plaintiff. But *Bridge* did not relax the requirement that a

Because Murray has failed to allege facts that demonstrate that Mulgrew's alleged RICO violation proximately caused her injuries, she may not bring a civil RICO action. The Court therefore concludes that Counts I and II of Murray's complaint must be dismissed.

B.     **Murray's Remaining Claims Shall Be Dismissed Because the Claims Over Which the Court Had Original Jurisdiction Have Been Dismissed.**

The Court next turns to Counts III through XV of Murray's complaint. These remaining claims, of which nine are alleged against Mulgrew, two against RBS Group, and two against both, arise under the laws of the United Kingdom. Compl. ¶¶ 56-118.

The Court had original jurisdiction over Murray's civil RICO claims because they arise under a federal statute. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Murray has not alleged that this Court has original jurisdiction over her other claims. *See* Compl. ¶ 40 (alleging federal question jurisdiction under 28 U.S.C. § 1331, referencing the RICO statute, and alleging supplemental jurisdiction under 28 U.S.C. § 1367). Were the RICO claims viable, the Court may have been able to exercise supplemental jurisdiction over the additional claims provided those claims were "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). If a court "has dismissed all claims over which it had original jurisdiction," however, it "may decline to exercise supplemental jurisdiction" over remaining claims. *Id.* at § 1367(c)(3); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866 (2009) ("A district court's decision

---

civil RICO plaintiff show proximate cause, *see id.* at 2141-42, and Murray has not shown how Mulgrew's conversion of NatWest's financial interests in LJM Swap Sub directly caused her to suffer any harm.

7

whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). In particular, if "the federal claims are dismissed before trial," the Supreme Court has suggested that "the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Dismissal is appropriate in this case because the claims over which this Court had original jurisdiction have been dismissed and the parties have not even begun to conduct discovery, let alone prepare for trial. *Cf. Empagran, S.A. v. F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d 1, 12 (D.D.C. 2006) (declining to exercise supplemental jurisdiction over foreign-law claims where all federal claims over which court had original jurisdiction had been dismissed before trial). Accordingly, the Court dismisses the remaining counts of Murray's complaint.[4]

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that Murray's complaint should be dismissed in its entirety. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

---

[4] Because the Court dismisses Murray's complaint in its entirety for the reasons described herein, the Court will not address in depth either defendant's various additional arguments for dismissal on alternative grounds. The Court notes, however, that it appears that this Court is unable to exercise in personam jurisdiction over RBS Group or Mulgrew for the reasons they state in their papers.